THE UNION MANUFACTURING, COMPANY *against* PITKIN.

*A* attached the goods of *B,* in a suit against him, by *D,* an officer, who delivered such goods to *A* for safe custody. *C* then attached, by the same officer, the same goods, in the hands of *A,* in a suit against *B.* During the pendency of these suits, *A* and *B* submitted the subject matter of the suit between them to arbitration, and the arbitrators awarded, that *B* was indebted to *A* in a large sum, and that *B* should release to *A* all the property attached, and that *A* should withdraw his suit against *B*; which award was complied with. *C* obtained judgment and execution against *B.* In an action afterwards

*Hartford,*
*June,* 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

brought by *C* against *D,* for neglect of duty in relation to the goods attached in *C's* suit against *B,* the defence was, that the lien of *C* on such goods had been dissolved, by a withdrawal of the suit in which they were taken. To establish this defence, *D* introduced this entry, made by the clerk of the court on the docket and also on the file—" Withdrawn 6th day;" across which entry a line was drawn with a pen; and below another entry was made by the clerk—" Defaulted 19th day." It was also proved, that the attorney of *C* appeared and answered for him in that suit; that it was withdrawn in his absence; that after his return, on the 7th day of the term, the attorney of *B* informed him, (*C's* attorney,) that, at the request of *C's* agent, he had withdrawn said suit; that afterwards, on the 19th day of the term, the agent inquired of the attorney of *C,* if they could not have the suit restored and take a judgment against *B;* to which inquiry such attorney replied, that it could be done, if *B* would consent to it; that *B* did consent to it; and that thereupon, on motion to the court, the entries of withdrawal were erased, the cause was defaulted, and a judgment upon such default was regularly entered up in favour of *C* against *B.* On this evidence, the jury found, that *C* had intentionally withdrawn his suit, and gave a verdict for the defendant. On a motion for a new trial, it was held, 1. that entire justice had been done, by the verdict, as it would leave the goods in the hands of *A,* who was entitled to them under the award; 2. that the act of *C* in withdrawing in his suit against *B,* notwithstanding it was afterwards revived, during the same term, destroyed his lien by the attachment; 3. that the finding of the jury was not against, but in conformity with the evidence in the cause; 4. that the record of the judgment against *B* did not preclude or nullify the evidence regarding such withdrawal, especially as to *D,* who was not a party to that record. To prove the withdrawal of a suit brought by a corporation, a vote of that corporation authorizing the withdrawal, is not necessary: if the act be done by its agent or attorney, no other proof of authority will be required.

THIS was an action on the case against *Eli Pitkin,* an officer, who had attached property in a suit brought by the plaintiffs against one *Levi McKee.*

The cause was tried at *Hartford, January* term, 1841, before *Church,* J.

On the trial, it was admitted, that the plaintiffs had attached the goods described in their declaration, as the sole property of *McKee;* that the defendant was the officer who served the writ of attachment; that the plaintiffs eventually obtained a judgment and execution in the suit; that a legal demand had been made of the defendant, as the attaching officer, for the goods so attached, that they might be levied upon and sold on the execution; and that the defendant had neglected and refused to deliver them. It was also admitted, that the same goods had been previously attached, by the defendant, as an officer, at the suit of *Horace Pitkin* against said *McKee;* and that both suits were pending at the same time, in the county

*Hartford,*
*June, 1841.*

The Union
Manufacturing
Company
*v.*
Pitkin.

court; that the defendant had delivered the goods, when first attached, to *Horace Pitkin,* for safe custody; and that they were still in his possession, when attached by the plaintiffs. It was further admitted, that during the pendency of these suits, *Horace Pitkin* and *McKee,* without any assent or privity on the part of the present plaintiffs, submitted the subject matter of the suit between them to arbitration; that the arbitrators awarded, that *McKee* was indebted to *Pitkin,* as copartner, in a sum more than 1200 dollars, and that *McKee* should release to *Pitkin* all the property attached, and that *Pitkin* should thereupon withdraw his suit against *McKee;* that *McKee* released the goods accordingly, and *Pitkin* withdrew his suit against *McKee,* on the 2d day of the *November* term of the county court in 1839.

The prominent question of fact on the trial, was, whether all or any of the property attached by the plaintiffs, in their suit against *McKee,* was the separate and individual property of *McKee,* or the property of the copartnership of *Pitkin* and *McKee.*

Early in the year 1836, *Pitkin* and *McKee* entered into a copartnership in the carriage-making business, and continued to prosecute that business, as copartners, in the usual manner, until *April* or *May,* 1837. The plaintiffs claimed to have proved, that some part of the goods attached by them had always been the separate property of *McKee,* and never belonged to the copartnership; and as to the residue, they claimed to have proved, that in the *Spring* of 1837, said business was dull, and *Pitkin* was unwilling to continue it until more prosperous times should come; and that it was thereupon agreed between *Pitkin* and *McKee,* that the copartnership should still exist, but that *McKee* should take the whole business upon himself, and conduct it on a small scale, in his own name and on his own account and responsibility; that *McKee* might take and use the company stock on hand, allowing the copartnership the value thereof, without the liberty of contracting new debts on the copartnership account, or subjecting the company to additional responsibilities; and that *McKee* did thereupon prosecute said business, in his own name, for himself solely, and hired and paid the workmen, purchased stock, and, in the prosecution of said business, contracted the debt now due to the plaintiffs; and

*Hartford,*
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

that the residue of the goods attached, by the plaintiffs, was property manufactured and purchased by *McKee,* while so prosecuting said business, and so was his separate and individual property.

The defendant denied, that any part of the property attached by the plaintiffs, was the separate estate of *McKee;* and claimed to have proved, that by the arrangement between *Pitkin* and *McKee* in the *Spring* of 1837, *McKee* was authorized, if he pleased, to continue the business of the copartnership on a small scale, if he would not involve the company in new debts or additional responsibilities; that he might use and work up the stock on hand, finish the unfinished work, and apply the avails to the payment of the debts against the company; and that if there should be any profits, *McKee* should be entitled to the whole of them; but that all the property on hand, as well as all that should be purchased by *McKee,* in prosecuting said business, should be the property of the company until a settlement of the copartnership business should be made.

The defendant introduced said award of arbitrators and other evidence, by which he claimed to have proved, that said copartnership was deeply involved in debt; that *Horace Pitkin* had made large advances for its benefit more than had been made by *McKee;* and that *McKee* was insolvent, and in arrear to the company more than the value of the property attached; and that in truth *McKee* had no real interest therein.

The defendant also claimed to have proved, that before any demand was made upon him, *viz.* at said *November* term of the county court, the lien of the plaintiffs upon said goods created by their attachment, was dissolved; and that the plaintiffs, therefore, could not recover in this action, even if the jury should find that the goods so attached were the separate property of *McKee;* and prayed the court so to instruct the jury. In support of this claim, the defendant introduced evidence conducing to prove, that at said *November* term of the county court, on the 16th day of the term, an action was tried, in which the present defendant was plaintiff, and said *McKee* and *George Bunce* were defendants, founded upon a receipt, executed to the then plaintiff, as an officer, for a part of the same goods described in this declaration, and which had

*Hartford,*
*June, 1841.*

The Union
Manufacturing
Company
*v.*
Pitkin.

been before attached, by the then plaintiff, as an officer, at the suit of one *Hubbard* against said *McKee,* thereby constituting a prior lien upon such goods; that *Loring Carpenter,* the agent of, and, as the defendants claimed, a stockholder also in, *The Union Manufacturing Company,* was wanted as a witness in the cause on trial; that the facts claimed by the defendants were denied by the plaintiff; and that to enable *Carpenter* to testify for the defendants, the present plaintiffs withdrew their action against *McKee,* on which the property in question was attached. It was admitted that *Carpenter* did testify on the trial of said action. And the defendant introduced in evidence an entry in the docket of the county court at said *November* term, as follows: "Withdrawn 6th day;" and a like entry on the original file in the cause; both of which entries were made, by the clerk of the court; and across them a line had been drawn with a pen, below which another entry was made, by the clerk, "Defaulted 19th day."

The defendant also introduced *Ralph R. Phelps,* Esq. as a witness, that he was first employed as the attorney of *Horace Pitkin* in his suit against *McKee,* and in the arbitration; that he was also the attorney of the present plaintiffs in their suit against *McKee;* and was also the attorney of the present defendant in his suit against *McKee* and *Bunce;* that he appeared and answered for the present plaintiffs in their action against *McKee,* at said *November* term; that that action was withdrawn, in his absence; that after his return into court, on the 7th day of the term, *Thomas C. Perkins,* Esq. the attorney of *McKee,* informed him, that he and *Carpenter* had been in search of him, but could not find him, and that, at *Carpenter's* request, he, *Perkins,* had withdrawn the suit; that afterwards, on the 19th day of the term, *Carpenter* inquired of the witness, if the plaintiffs could not have the suit restored, and take a judgment thereon; that he replied to *Carpenter,* that it could be done, if *McKee* would consent to it; that *McKee,* who was then present, did consent to it; and that thereupon, on motion to the court, the entries of withdrawal were erased, and the cause defaulted. There was no other proof that said suit was withdrawn.

It was not proved nor claimed, that *Carpenter* was a stockholder in said company, when he testified; or that he was objected to, as a witness, on the trial; nor was there any

evidence that the defendant or *Horace Pitkin* did any act in relation to said property attached, by reason of the withdrawal of the suit.

*Hartford,*
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

Upon this evidence the plaintiffs claimed, that the record of the judgment of *The Union Manufacturing Company* v. *McKee,* was conclusive evidence upon the defendant in this suit, that said action had not been withdrawn ; and if not conclusive, that the facts furnished no evidence that it had been intentionally withdrawn, with the knowledge and consent of the plaintiffs. The plaintiffs also claimed, that if the suit had been withdrawn, and the entries made, by mistake, or unadvisedly, the court might, on motion, direct it to be restored and defaulted, so as to preserve the lien as against third persons, especially if the defendant had neither done, nor omitted to do, any act in relation to the property attached, by reason of such withdrawal or entries ; and the plaintiffs prayed the court so to instruct the jury.

The court, on this point, did not so instruct the jury, but did instruct them, that if, from the evidence they believed, that the plaintiffs did in fact, and intentionally and without mistake, withdraw said action, the lien created by the attachment was thereby dissolved, and the plaintiffs could not sustain this action.

The plaintiffs offered *McKee* as a witness, who was objected to, by the defendant, as interested ; whereupon the plaintiffs executed and delivered to him a discharge from all claims they had against him, by virtue of a certain judgment against him, at the *Hartford* county court, *November* term, 1839, except so far as the plaintiffs might be able, at their own risk and expense, to enforce collection thereof out of the property attached by them in the suit in which such judgment was rendered, or out of any claim the plaintiffs might have against the officer who attached said property, or other persons who had infringed the rights of the plaintiffs in relation to said property. *McKee* accepted the discharge, and thereupon gave his testimony. The defendants thereupon claimed, that this instrument discharged the plaintiffs' debt and judgment, so that they could not by law recover at all in this action, or no more than nominal damages ; and prayed the court so to instruct the jury.

*Hartford*
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

The court gave no instruction to the jury on this point, but reserved the question for the opinion of the supreme court of errors. The court then instructed the jury, that if they should find, that all the property attached by the plaintiffs, and demanded of the defendant, was copartnership property, and if no part of it belonged to *McKee,* as his separate estate, the plaintiffs could not recover; but if some part of it was the separate estate of *McKee,* then unless the lien was dissolved, the plaintiffs were entitled to recover for the value of such property; and the court requested the jury to find specially on this point.

The jury returned a verdict for the defendant, and found that in the case of *The Union Manufacturing Company* v. *McKee,* the action was intentionally and substantially withdrawn.

The plaintiffs moved for a new trial, on the ground that the verdict was against the evidence in the cause upon the question of the withdrawal of said suit, and also for a misdirection.

*Toucey* and *T. C. Perkins,* in support of the motion, after remarking that here were all the essential requisites of a valid subsisting lien, *viz.* authority to attach the goods, an actual attachment by virtue of such authority, a due return of the writ and a judgment for the plaintiff, contended, 1. That this lien had not been dissolved.

In the first place, the minutes of the clerk did not prove a withdrawal: they are not a record.

Secondly, if they did, the cause, with all its incidents, was under the controul of the court, during the term; and it was competent to the court to restore the plaintiffs to their original condition. A suit is not terminated, by any proceeding in it or relating to it, during the term, so as to dissolve the lien, until it is in such a state as to require new process. Suppose a judgment is had against the plaintiff, the first week in the term, and, three weeks afterwards, he appeals the cause; or suppose a judgment for the defendant on demurrer, and afterwards the plaintiff amends; or suppose a plaintiff is nonsuited, and afterwards the non-suit is struck off; may the officer, in the meantime, give up the property attached? Is

the lien at an end? In *Lockwood* v. *Jones*, 7 *Conn. Rep.*
432. the principle here insisted on was carried further than
this case requires. There, it was held, that a recognizance
on an appeal was not discharged, by a judgment in favour of
the appellant, where a new trial was granted, and, at a subse-
quent term, a judgment in favour of the appellee was ren-
dered.

Thirdly, there has been no fraud or intentional wrong, on
the part of the plaintiffs; nor has the officer been prejudiced,
by the acts in question. It is the ordinary case of correcting
an entry of the clerk during the term.

Fourthly, the judgment recovered shews, conclusively, that
the suit was never withdrawn. The record speaks absolute
verity, and cannot be contradicted, by the mere minutes of
the clerk. *Davidson* v. *Murphy*, 13 *Conn. Rep.* 213.   3 *Bla.*
*Com.* 406.   *Croswell* v. *Byrnes*, 9 *Johns. Rep.* 287.   *South-*
*gate* v. *Burnham*, 1 *Greenl.* 369. 375.   *Bush* v. *Byvanks*, 2
*Root*, 248.   *Fitch* v. *Hall, Kirby*, 18.

Fifthly, if the effect of the judgment can be questioned, by
any one, it cannot be, by the officer: he is bound by the
record.

2. That the verdict was against the weight of evidence on
the question whether the plaintiffs did in fact, intentionally
and without mistake, withdraw the suit.

3. That the discharge given to *McKee* did not preclude a
recovery in this action; as it contained an express reservation
of the right of the plaintiffs to coerce payment in this way.


*W. W. Ellsworth*, contra, contended, 1. That a parol
inquiry was proper, to shew, that the cause had been with-
drawn and the lien dissolved, notwithstanding a judgment
was afterwards taken by default.

In the first place, such inquiry was necessary, as the fact in
question could be shewn in no other way. The present de-
fendant was not a party to the proceeding, and could not have
filed a bill of exceptions. *Peck* v. *Sill*, 3 *Conn. Rep.* 157.
*Burrows* v. *Stoddard*, 3 *Conn. Rep.* 432.   *Parsons* v. *Ely* &
al. 2 *Conn. Rep.* 377.   *Putnam* v. *Hall*, 3 *Pick.* 445.   *Willis*
v. *Crooker*, 1 *Pick.* 204.   *Starr* v. *Lyon* & al. 5 *Conn. Rep.*
538.   *Smith* v. *Saxton*, 5 *Pick.* 483. 487.   *Pierce* v. *Jackson*,
6 *Mass. Rep.* 242.   Seconly, the fact so shewn is not contrary

*Hartford,*
*June, 1841.*

The Union
Manufacturing
Company
*v.*
Pitkin.

to the record.   It *is* perfectly *consistent with the record, as it* now stands, that these proceedings have been had.   See the authorities above cited.   Thirdly, as this objection was not made at the trial, the plaintiffs cannot avail themselves of it here.

2. That a new trial ought not to be granted on the ground that the verdict was against the evidence in the cause.   In the first place, the mere *sufficiency* of the evidence adduced, does not raise a question of *law ;* but the decision of it belongs, appropriately and exclusively, to the jury.   Secondly, the verdict is in accordance with the evidence.   If the cause were to go to another jury, it would be their duty, upon the same evidence, to find in the same way.

3. That the plaintiffs, by discharging their debt against *McKee,* have discharged their cause of action against the present defendant.

WILLIAMS, Ch. J.   We cannot look at this case without seeing that entire justice has been done between these parties. The first attaching creditor, who abandoned his lien in compliance with an award which was intended to make him the owner of the goods, and whose debt, according to the award, would have absorbed them, is now, as receipter, in possession of them, and claims a right to hold them under the release from *McKee ;* the plaintiffs having abandoned their lien on the goods, at least for a time, by the withdrawal of their suit. The parties are now placed just where they would have been, had *Pitkin's* judgment been obtained from the court, instead of the arbitrators, and *Pitkin's* title been consummated, by a purchase of the goods under his execution, instead of a release from *McKee ;* and if an unexpected effect has followed from the acts of each party, which left them precisely where they would have been, without such acts, it will be no cause of regret.

It is, however, the duty of the court, and it will be their object, not to lose sight of the legal rights of the parties, or to deprive either of them of any advantage which the law gives to them.   That the act of *Pitkin* in withdrawing his suit destroyed his lien, cannot be doubted.   Why?   Because the moment his suit ceased to exist, that moment his lien was dissolved.   It did not wait for the termination of the session :

but on the day of withdrawal, the plaintiffs had the only incumbrance. When then the plaintiffs withdrew their suit, *Pitkin*, it would seem, had the same right to say to them "your incumbrance is now removed, and we stand as before."

*Hartford,*
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

But the plaintiffs say, that their suit never was withdrawn: there is no evidence of the fact. It would seem as if the plaintiffs, if this was their claim, should have objected to any parol testimony upon this subject. No such objection having been made, it comes to a question as to the weight of evidence. And here it is urged, that a record imports absolute verity, and nothing can be brought against it ; that the evidence adduced proves nothing. The record is, that the plaintiffs recovered a judgment against *McKee* by default ; and this is conclusive evidence that the suit was not withdrawn.

That a record is conclusive against parties and privies, is among first principles. But it is equally well settled, that strangers are not concluded by it; (*Proctor* v. *Johnson, Salk.* 600. S. C. 1 *Ld. Raym.* 669.) though, as it respects the fact of the judgment, it is evidence against all the world. This record, then, while it is conclusive against *McKee* that such a debt exists, is, as against other persons, conclusive of the fact that such a judgment was obtained as this record imports, but not conclusive against them of the debt. The defendant in that suit ought, upon any principle, to be precluded from alleging any thing against a judgment he might have resisted and defeated, but which was obtained by his own consent. But this third person has not consented to it; nor could be permitted to be heard against it. When, therefore, it is said, that the act of the court has nullified the act of withdrawal, and that it is as if it never was, we understand this to be true as it respects the parties only ; and if a third person could attack the judgment as to its merits, surely he can shew the process which led to that judgment. It would be absurd to say, that a judgment could not prove the existence of the debt as it respects third persons, and yet that it operated so conclusively as to conceal the arrangement by which it was obtained.

If the effect of a final judgment is such as the plaintiffs claim, then how can it be shewn that an amendment has taken place affecting the rights of third persons? But this has been allowed in this court. Thus, where a suit was

*Hartford,*
June, 1841.
———————
The Union
Manufacturing
Company
*v.*
Pitkin.

brought against *Hall* and *Robbins*, and *Hall's* property was attached by *A*, and afterwards was attached by *B*, in a suit against *Hall* only ; and the plaintiff in the first suit, by leave of the court, amended his writ, by striking out the name of *Robbins ;* it was held, that the rights of the second attaching creditor could not thus be affected.   *Peck* v. *Sill,* 3 *Conn. Rep.* 157.

If it be asked here, who shall decide whether the entry of withdrawal shall be erased—this court, or the court before which the suit was, the same question might have been put in that case as to the amendment.   If it be said, that this case was subject to the law of this court, the same might be said there.   If this judgment of the county court nullified the entry of withdrawal, and placed it as if it never existed, then we see not why the final judgment against *Hall* did not prove, that the suit was brought against *Hall* alone ; and if the record of a judgment here against *McKee* prove that there could have been no withdrawal, we see not why the record there against *Hall* did not prove that there was no amendment.   Neither fact is proved, by the record ; and so long as the courts have the power of permitting amendments or alterations of records, we see no possible reason existing why, in a proper case, one not a party should not be permitted to shew the fact of such alteration.   Certainly, we think there is no reason for allowing it, in the one case, and not in the other.   In neither case, is the judgment denied, or the record attacked.   The fact that the judgment was obtained, stands unimpeached and unimpeachable.

Now, had the clerk in his record given, as he might have done, the real fact that the amendment was allowed, or the erasure ordered, by the court ; there would be nothing inconsistent in the record with itself.   All would see that the court, in the due exercise of its powers, had, for reasons deemed sufficient, permitted a party who had abandoned the suit, or mistaken his plea, to set himself right in court ; and that fact appearing by as high evidence as the final judgment, we cannot doubt that a third person might avail himself of it.   It comes then to a question whether parol evidence of a fact not inconsistent with the record, can be given, by a person not a party to that record.

In the above cited case of *Peck* v. *Sill,* the court held, that

such evidence was proper, being the best which could be obtained; and, for the same reason, it should be admitted in this case.

That there may be cases, in which parol evidence that a suit was withdrawn, may be given, cannot admit of a doubt. Suppose a plaintiff had agreed to withdraw a suit, upon a given day, and had done it; might he not prove this, by parol? We know not how else it could be proved; for by our practice, it never becomes a matter of record. The clerk makes an entry of it in his docket, and there it is left; and no record is made in relation to it. The best evidence, then, is the recollection of witnesses, accompanied with a *memorandum* of the proper officer that such was the fact; and there is nothing in the opinion of this court in *Davidson* v. *Murphy*, 13 *Conn. Rep.* 213. which contradicts this. We there held, that such minutes did not constitute a record: and for that very reason, we hold that parol proof is admissible, of which this entry of the clerk may form a part.

Suppose the body of *McKee* had been in custody on this suit, and the sheriff, after this withdrawal, had liberated him; or suppose this officer had delivered up the goods to the owner; could not the fact of the withdrawal be proved, by parol? We understand that this is admitted. There is then nothing in the nature of the proof, that forbids it. If it be a fact against the record, which no number of witnesses can prove, then it is no more capable of proof, in that case than in this. And if, on the contrary, it is admissible for that purpose, the difficulty, as it respects the record, is overcome, and the only question is, whether the nature of the defendant's case demands it. On this point, it is enough to say, that if the proof is, in its nature admissible, and when admitted, is sufficient, we see not why any third person, whose legal rights may be affected by it, is not entitled to the benefit of it.

It has been compared to the case of bail, who cannot plead the surrender of the principal, unless a record be made of the fact. This would prove too much; as here a withdrawal is not a matter of record. Besides, in that case, we are told, that the end of the bail is not only to bring the body, but that he come subject to the court, according to the meaning of the bail. *Wickstead* v. *Bradshaw, Hob.* 116. It has also been compared to the case of a judgment on demurrer, where a

*Hartford*,
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

*Hartford,*
*June, 1841.*

The Union
Manufacturing
Company
*v.*
Pitkin.

party may amend or appeal during the term ; where the lien continues. In such a case, as well as a non-suit by order of court, there is no voluntary act on the part of the plaintiff. He submits to the order of the court ; and to hold that a judgment deprives him of his lien, would be, in effect, in many cases, to deprive him of all benefit of his appeal. Here, the court held, and, we think, correctly, that the intentional withdrawal of a suit, without any mistake, of itself discharged the lien ; and being once discharged, it can no more be revived, than the right to retake the body of a prisoner, which has once been given up.

It is said again, that when a suit is withdrawn, it is known to be subject to be revived at the order of the court. Would it then be claimed, that if a debtor was in gaol upon an attachment, and the suit was withdrawn the first day of the term, the officer would be justified in detaining him for twenty or thirty days, during the session of the court, because it was possible that the cause might be revived? We think not. And if the party so detained once had a cause of action, and brought his suit, we know of no principle, by which that suit could be defeated in consequence of the act of third persons. The lien under which the plaintiff claims, is given to him as the reward of legal diligence. It may, of course, be waived by him ; and when he intentionally, deliberately withdraws his suit, he, of course, must be supposed to intend to waive the benefit of his attachment. Having once done this, we know of no remedy in the power of the court, which can revive the lien and thereby affect the rights of persons not before the court ; much less, when the act of the court is founded upon the assent of parties, whose interest may be entirely at variance with the rights of others to be affected by it.

We say nothing of cases of mere mistake ; nor do we give any opinion how it might be, were it our practice, as it is in some courts, that a record be made of the withdrawal of a suit. This is a case where the suit was intentionally withdrawn ; and in such a case, the necessary result is, that the lien is terminated ; such at least is the opinion of a majority of the court.

It has also been claimed, that the declaration of Mr. *Perkins*, the attorney of *McKee*, ought not to have been received

in evidence. A sufficient answer to that would be, that it was not objected to below. But had it been, we see no ground upon which it could be sustained. The attorney for the plaintiff finds the suit withdrawn. The defendant's attorney informs him under what circumstances it was done, and by whose authority. This he acquiesces in, for nearly a fortnight, without objection ; and then the plaintiffs' agent advises with their attorney whether it could not be revived ; and without any claim of mistake or want of authority for the act. Surely, the declaration of Mr. *Perkins* as to the authority under which it was done, accompanied by the subsequent conduct of the party, is proper evidence to show that the withdrawal was properly made ; and it was not only proper evidence, but we think, very satisfactory evidence of the fact. For some reason or other, (it is not very clearly proved wherefore,) *Carpenter*, the plaintiffs' agent, was very solicitous to have the suit of the plaintiffs against *McKee* withdrawn. The attorney is sought and cannot be found. And so anxious is he to have it done *forthwith*, that he procures the defendant's attorney to do it. As soon as the plaintiffs' attorney appears, the transaction is very properly explained to him ; he acquiesces in it ; and, by the consent of all concerned, the suit remains as dead from the 6th to the 19th day of the term. Then there is no complaint that this has been done hastily, unintentionally or wrongfully ; but for some unassigned reason, the plaintiffs' agent consults their attorney, not on the question whether a mistake can be corrected, but whether this cause, now dead, can be revived ; and he thinks it can be, if the defendant in the cause will consent ; and the defendant's consent is procured.

But it is said, that no act or vote of the corporation is shown ; nor is there any witness to the fact that this was done by the corporation, or by its authority. It is now quite too late to question the acts of a corporation, because a vote and seal are not shewn, since the decisions in our own courts and the courts of the *United States*. Besides, corporations, by our law, are expressly authorized to appear and defend suits, by their agent or attorney. In this case, the agent and attorney both concurred in this act of withdrawal. Their act, therefore, must be considered as the act of the corporation ; and we know not for what reason the corporation

*Hartford,
June, 1841.*

The Union
Manufacturing
Company
*v.*
Pitkin.

*Hartford,*
June, 1841.

The Union
Manufacturing
Company
*v.*
Pitkin.

should now, without any evidence, be permitted to disavow the act of the agent and attorney, more than any individual.

It is also urged, that it was not proved, that any communication on the subject was made to the court. When the defendant's attorney informed the opposite counsel that the suit was withdrawn; when the clerk made an entry to that effect; and when application, many days after, was made to the court to restore the cause, without a hint but that what had been done, had been regularly done; it would be most extraordinary for the court, now, to presume, that when the cause was agreed on all hands to be withdrawn, it was not regularly done; or that the party who had submitted to go and ask the court to restore the cause, upon consent of the opposite party, should now ask this court to presume it never was withdrawn. If the evidence of a withdrawal was admissible, there surely can be no possible doubt that it was sufficient to prove the fact.

As to the effect of the discharge to *McKee* and his admissibility as a witness, it is a question of some nicety; and as the decision of it is not necessary to terminate this case, we shall not examine it further.

We think that no cause for a new trial is shewn.

In this opinion CHURCH, WAITE and STORRS, Js. concurred.

SHERMAN, J., after much hesitation, acquiesced in the decision.

New trial not to be granted.