———o———

WASHINGTON MUTUAL FIRE INSURANCE COMPANY, Respondent, vs. ST. MARY'S SEMINARY, Appellant.

1. *Contracts—Promissory notes—Signature—Descriptio personœ—Ambiguity—Parol evidence.*—If there is any ambiguity in a contract in writing or a promissory note, in the description of the person, parol evidence is admissible to afford an explanation thereof, and to show upon whom the responsibility of the note should rest, and for whose benefit the contract was made; and if a contract and a note refer in their terms to each other, both may be taken together in construing them.

2. *Corporations—Officers—Acts of—Authority presumed.*—The authority of the chief officer of a corporation to perform certain official acts, may be proven by co-temporaneous or subsequent evidence of special authority.

3. *Practice, civil—Trials—Instructions must not assume facts not in evidence.*—Instructions which assume the existence of facts which are not in evidence are improper.

*Appeal from St. Louis Circuit Court.*

*Daniel Dillon,* for Appellant.

I. The court erred in admitting the note in evidence. (Wood vs. Goodridge, 6 Cush., 122; Smith vs. Alexander, 31 Mo., 194; Musser vs. Johnson, 42 Mo., 78; McClellan vs. Reynolds, 49 Mo., 314; 1 Pars. Notes & Bills, 92–93, and notes *g* and *h*; Moss vs. Livingston, 4 Coms., 208; Taber vs. Cannon, 8 Met., 456; Tucker Man. Co. vs. Fairbanks, 98 Mass., 101; Arnold vs. Sprague, 34 Vt., 402; Titus vs. Kyle, 10 Ohio St., 444; Harkins vs. Edwards, 1 Clarke, (Iowa) 426; Barker vs. Mech. Ins. Co., 3 Wend., 94; Pentz vs. Stanton, 10 Wend., 271; Pumpelly vs. Phelps, 40 N. Y., 59; McClernan vs. Hall, 33 Md., 293.)

II. The court erred in admitting in evidence the policy of

insurance. On its face it purported to insure Mr. Daniel Mc-Carty, President of St. Mary's Seminary, reference being had to his application, and in consideration that the assured had become a member of the company and had bound *himself, his heirs, executors and administrators*, &c., and had executed to plaintiff a note for $750, &c.

(*a.*) This is expressly and emphatically a contract with Daniel McCarty, and to be permitted to show that it was not a contract with him, but with somebody else, would be to allow evidence to directly contradict the express words of the contract. In addition to the cases already referred to, see : Murphy vs. Price, 48 Mo., 247 ; Solmes vs. The Rutger F. Ins. Co., 3 Keyes, 416 ; Williams vs. Christie, 4 Duer., 29 ; Newcomb vs. Clarke, 1 Denio, 226 ; Fenley vs. Stewart, 5 Sandford, 101 ; Tanner vs. Christian, 29 Eng. L. & Eq., 103 ; Lennard vs. Robinson, 32 Eng. L. & Eq., 127.

(*b.*) This policy is a contract under seal. No person can be held a party to such a contract unless his name is on the face of it as a party thereto. (Lincoln vs. Crandell, 21 Wend., 101 ; Evans vs. Wells, 22 Wend., 324 ; White vs. Skinner, 13 Johnson, 307 ; Tippetts, vs. Walker, et al., 4 Mass 595 ; Heffernan vs. Adams, 7 Watts, 121 ; Mears vs. Morrison, 1 Breese, 172 ; Sheldon vs. Dunlap, 1 Harrison, (N. Y.,) 245 ; Simonds vs. Beauchamp, 1 Mo., 591.)

(*c.*) Besides, if the policy was not under seal, the same rules should be applied to it as to sealed instruments. (Higginson vs. Dall, 13 Mass. 99 ; Jennings vs. Chen. Co. M. Ins. Co., 2 Denio, 79.)

If the policy did not insure the defendant there was no consideration for the note, and even if the note be held to be the note of the defendant, it was void for want of consideration.

III. The court erred in giving instructing, No. 1, for plaintiff. In the first place, it makes the recognition of its President, the recognition of defendant, without reference to whether or not he had authority to represent defendant in that matter or not.

In the second place there was no evidence to warrant the

31—VOL. LII.

giving of this instruction. There was no evidence of the payment of any money by any one, except by Burke, and it is not contended that he had any authority to pay the money.

IV. The court erred in giving instruction No. 2, for plaintiff. It simply states an abstract proposition of law without any reference to the evidence in the case and should have been refused. (Huffman vs. Ackley, 34 Mo., 277.)

V. The court erred in giving instruction No. 1, for defendant. There was no evidence tending to prove that Daniel McCarty had any authority from defendant to effect the insurance or make the note.

The authority of a president, cashier or any other officer of a corporation must be proved like the authority of any other agent. (First Nat. Bank &c. vs. Hogan, 47 Mo., 472; The M. Bk. of the city of N. Y. vs. Clements, 3 Bosw., 600; Blood vs. Marcuse, 38 California, 590; McCullough vs. Moss, 5 Denio., 575; Leavitt vs. The Conn. Peat. Co. (U. S. C. C. Dist. of Conn.,) 1 Am. Corp. Cases, 113; Angell and Ames on Corp. page 298, (8 Ed.,) Sec., 297; Harwood vs. Humes, 9 Ala., 659; Chitty on Bills 28.)

Besides, if Daniel McCarty had full authority to insure defendant in plaintiff, this of itself would not authorize him to delegate Thomas Burke to effect the insurance. (Story on Agency 13; Chitty on Bills, 32; Emerson vs. The Prov. Hat Man. Co., 12 Mass., 244; Brewster vs. Hobart, 15 Pick., 302; Wilson vs. Y. & M. L. R. R. Co., 11 Gill. & J. 74; Mason vs. Wait, 4 Scammon, (5 Ills.,) 127.)

There was no evidence tending to prove a ratification on the part of defendant, or any evidence tending to prove that any person connected with defendant had knowledge of the existence of this insurance, except McCarty. Here, as all the way through the case, plaintiff makes McCarty and defendant one.

Before any action of McCarty tending to prove a ratification, can be evidence against defendant, it must be shown that he had authority to bind defendant in the matters which are claimed to be acts of ratification. There was no evidence that he had authority to represent defendant in anything.

The payment of the money was made by Burke without any authority and it never was assented to. There being no evidence tending to prove authority to Burke to make the note, and no evidence tending to prove a ratification by defendant, the instruction ought to have been given.

*W. H. Horner*, for Respondent.

I. The policy in the name of "Daniel McCarthy, President of Saint Mary's Seminary," is a policy insuring the appellant, and the note and application signed by him as President, are the note and application of appellant. They need no extraneous evidence to show their meaning. If they did, ambiguities may be explained by parol evidence, and the evidence in this case fully sets forth the intention of the parties. (Sherman vs. Fitch, 98 Mass., 59; Haven vs. Adams, 4 Allen, 80; Angell & Ames on Corp, (9th ed., 1871) pp. 293-6-7; §§ 293-4 and citations; Thompson vs. Tioga R. Co., 36 Barb. 79; Bird vs. Daggett, 97 Mass. 495; Sharp vs. Bellis, 61 Penn. State, 59; Nichols vs. Frothingham, 45 Maine, 220; Eastern R. Co. vs. Benedict, 5 Gray 561; Com. Bank vs. French, 21 Pick. 486; Dispatch Line vs. Bellamy Mf. Co. 12 N. H., 205; Mechanics' Bank vs. Bank of Columbia, 5 Wheaton 326; Smith vs. Alexander, 31 Mo., 193; Schuetze vs. Bailey, 40 Mo., 69; Musser vs. Johnson, 42 Mo., 74; McClellan vs. Reynolds, 49 Mo. 312.)

II. Upon the face of the policy, note and application they should be construed as the contract of appellant, and any doubt as to their meaning is removed by the circumstances attending their execution. It is admissible to show the intention of the parties by facts surrounding the transaction, and the conduct of the parties; see cases above cited.

III. McCarthy was acting as President openly and under color of office, and there follows from this fact a presumption of a legal holding, and an authority to perform the duties of the office. (State Bank vs. Bell, 5 Black., 127; Union Manufacturing Co. vs. Pilkin, 14 Conn., 174; Ang. & Ames on Corp., (9th Ed.) sec. 282, p. 277; Musser vs. Johnson, 42 Mo. 74.)

Assuming then that President McCarthy was the officer who should represent appellant, the meaning of the instruments offered in evidence, *without regard to extrinsic facts* as a question raised by appellant in the Court below. In discussing this point, the Courts have laid considerable stress upon what they have termed the *official* marks appearing upon the face of the contract. In the application, it purports to be make by D. McCarthy, President of St. Mary's Seminary, and it is for insurance upon building owned by appellant, used for religious and educational purposes. *The note* is attatched to the *application*, as a part of it, printed upon the same sheet. These are all indications that the Seminary is to receive the benefit of the contract. The application is by the terms of the policy a part of the policy. The note, policy, and application form parts of one entire contract, when they are referred to in the policy. (Gahagan vs. U. M. Ins. Co., 43 N. H., 176; 27 N. H., 157; 38 N. H., 338.)

IV. But under the law as stated above, the facts attending the execution of the contract leave no room for doubt as to the intention of the parties. It was the appellant's property insured; it was the appellant's money paid by Burke, as first payment upon the note; it was the appellant's chief executive officer who authorized in the first instance, and then ratified and adopted the contract. In case of damage by fire, could it be said, looking at the form of these instruments, in the light of all these circumstances, that the appellant could not recover from appellee the amount of appellant's loss?

V. The strict rules of former times requiring seals and other useless formalities no longer prevail, and contracts of corporations are now formed by the express promises of their agents and officers, or *implied* from their acts, as in case of individuals. (Angell & Ames on Corp. (8th Ed.) Sec., 237, p. 212.)

VI. The rule of law is, that a person for whom another has performed some act, as his agent, shall at once upon knowledge of the facts, either ratify or repudiate the acts of the agent. Silent acquiesence is construed as an adoption, and

the principal is not permitted to procrastinate, to partially receive and partially reject the benefits of a contract thus entered into. (Dunlap's Pal. Ag. 324, note; Broom's Legal Maxims, 776; Badger vs. Bank of Com., 26 Maine, 428; Bank of U. S. vs. Dandridge, 12 Wheaton, 64; Finney vs. Fairhaven Ins. Co., 5 Met., 192; Amory vs. Hamilton, 17 Mass., 103; Nesbitt vs. Helser, 49 Mo., 383.)

SHERWOOD, Judge, delivered the opinion of the court.

Action in the St. Louis Circuit Court by the Washington Fire Insurance Company to recover from St. Mary's Seminary a certain sum for assessments made by the former on a premium or deposit note, which the defendant was in the petition charged with having executed. The answer was a general, as well as a very lengthy and specific, denial of each and every allegation which the petition contained. It denied ever having made any application to plaintiff for insurance; denied that any application of defendant to plaintiff for insurance was signed by Daniel McCarthy, President of defendant, per Thomas Burke, the agent of defendant; denied the delivery by plaintiff to defendant of its Policy of Insurance; denied the execution by defendant to plaintiff of its certain premium deposit note mentioned in the petition; denied that any note executed by defendant was filed with the petition; denied that any note executed or delivered by defendant to plaintiff was signed by Daniel McCarthy, President, per Thomas Burke; denied that McCarthy & Burke were authorized agents of the defendant to make any such application or to execute any premium note, &c., &c.

The note mentioned in and filed with the petition is in this from.

"$750. For value received in Policy No. 2969, dated the fourteenth day of March, 1866, issued by the Washingtion Mutual Fire Insurance Company of St. Louis, I promise to pay said company (or their Secretary for the time being) the sum of seven hundred and fifty dollars, in such portions and at such

time or times as the directors of said Company may, agreeably to their Acts of Incorporation, require.

Daniel McCarthy, President,<br>per Thomas Burke."

and indorsed on said note are these words No. 2969–$750. Received 10 per centum, $75, and Received Assessment, No. 5, $75

The trial was had before the court, a jury being waived.

The application mentioned in and annexed to the petition, was designated in said application as, "Application of Daniel McCarthy, President of St. Mary's Seminary," and was signed in the same manner as the premium note above referred to. The Policy of Insurance was of the same date and number as the note and application (both of which are referred to in the policy), and purports to "Insure Mr. Daniel McCarthy, President of St. Mary's Seminary, against loss or damage by fire to the amount of $5000, as follows, viz:

| | |
|---|---|
| On the Brick Seminary Building | $2500. |
| "   "   Stone Church Building | 2500. |
| | $5000. |

"Situated in Perry County, Missouri, near Perryville; $22,-500 on Seminary, and $12.500 on Church, insured elsewhere."

The evidence showed, that by the terms of the charter of defendant, it was placed in charge of three officers, "Superior, Assistant Superior, and Procurator," that at the time the note above mentioned was signed by Thomas Burke, Daniel McCarty was the incumbent of two of those offices; Procurator or Treasurer and Acting Superior or President. And the evidence, although conflicting, tended very strongly to show that Daniel McCarthy, either by acts of antecedent authorization or else of subsequent recognition, had empowered Burke to make the application for insurance, sign the note in the way it was signed, procure and transmit the policy and pay assessments.

Defendant objected to the introduction of both the note and policy in evidence, on the ground that the former was not and

did not purport to be the note of the defendant, and that the latter was not, and did not purport to be, a policy issued to or insuring defendant. The court allowed both note and policy to be read in evidence, and defendant excepted.

The court at the instance of plaintiff gave the following instructions:

1. "If the Court believes from the evidence, that defendant through its President or Superior recognized the note sued on as the note of the defendant, by paying a portion thereof after demand upon defendant by notice to President or Superior, and that a portion of said note is now due, the court will find for plaintiff.

2. The court declares the law to be, that the act of a person for another acting as his agent may be valid and binding upon the principal, on account of the ratification or adoption of the agent's acts after knowledge by the principal of what the person acting as agent has done. A subsequent ratification has a retrospective effect and is equivalent to a prior command."

And at defendant's request gave instructions as follows:

1. "The court declares the law to be, that Daniel McCarthy had no authority to bind defendant by the Contract of Insurance offered in evidence, or the note sued on, from the fact that he held the office of President of defendant; and plaintiff, in order to recover in this action, must prove that said McCarthy had authority from defendant to execute said note, by evidence other than that the said McCarthy held said office of President of defendant.

2. "The court declares the law to be, that any instructions given by Stephen Ryan to Father Burke in reference to effecting insurance are not binding upon defendant.

3. "The court declares the law to be, that if Thomas Burke, at the time he made the contract of insurance given in evidence and executed the note sued on, acted as the agent of Daniel McCarthy, and not as the agent of the defendant, then no subsequent action of defendant could ratify said contract or the execution of said note, or make them binding upon defendant."

4. " The court declares the law to be, that the fact that Daniel McCarthy had authority to bind defendant by a contract of insurance, such a note as the one sued one, did not authorize him to delegate that authority to Thomas Burke; and plaintiff to recover in this action must prove by evidence other than the fact, that he himself possessed such authority, the power of said McCarthy to delegate said authority to said Burke. "

And these instructions the court refused, viz :

1. " The court declares the law to be that on the evidence plaintiff cannot recover.

2. " The court declares the law to be, that a simple authority from defendant to Daniel McCarthy to effect insurance for defendant, would not authorize said McCarthy to bind defendant by the contract of insurance given in evidence, or to the note sued on, and plaintiff in order to recover, must prove special authority to make such a contract of insurance, and to give such a note, or a ratification of said contract, and of the execution of said note by defendant."

3. The court declares the law to be, that the paying of premium money on the policy given in evidence, and of assessments on the note given in evidence, out of money in his hands belonging to defendant by Thomas Burke without authority so to do, and which payments defendant never assented to, was not a ratification by defendant of the contract of insurance read in evidence, or of the execution of said note, notwithstanding defendant accepted said Burke's account with defendant, crediting himself with money so paid, and took no steps to recover such money. "

4. The court declares the law to be, that the law does not authorize, and had not at any time authorized, any such officer of defendant as President, and no action of any person pretending to be such officer is binding upon defendant in consequence of his assuming to act as such officer.

Defendant excepted to the giving of the instructions for plaintiff, and to the refusal of the court to give the last series of instructions asked by defendant. Judgment was rendered for plaintiff, and after unsuccessful motions for new trial and

in arrest, the cause was taken to the general term, where the judgment of special term being affirmed, the case comes here by appeal.

If there was any ambiguity in either the note or the policy of insurance, parol evidence was perfectly admissible for the purpose of affording an explanation thereof, and of showing upon whom the liability, arising from the execution of the note, should rest, and for whose benefit the policy was designed to inure.

In Mechanics' Bank of Alexandria vs. Bank of Columbia, 5 Wheat., 327, which was an action of assumpsit on the following check:

"Mechanics' Bank of Alexandria, June 25, 1817.

Cashier of the Bank of Columbus pay to the order of P. H. Minor, Esq., ten thousand dollars.

Wm. Patton, Jr. "

The court says " It is by no means true, as was contended in argument, that the acts of agents derive their validity *from professing on the face of them* to have been done in the exercise of their agency. In the more solemn exercise of derivative power, as applied to the execution of instruments known to the common law, rules of form have been prescribed. But in the diversified exercise of the duties of a general agent, the liability of the principal depends upon the facts; first that the act was done in the exercise, and second within the limits of the powers delegated. These facts are necessarily inquirable into by a court and jury; and this inquiry is not confined to written instruments (to which alone the principal contended for could apply) but to any act with or without writing within the scope of the power or confidence reposed in the agent." In that case it was contended that, as the check on its face purported to be the private check of Patton, no extrinsic evidence could be received to prove the contrary. And in reference to that the court further says: " The only ground, upon which it can be contended that this check was a private check, is that it had not below the name the letters " Cas. " or " Ca. " But the fallacy of the proposition will at once appear from the

consideration that the consequences would be that all of Patton's checks must have been adjudged private. For no definite meaning could be attached to the addition of these letters without the aid of parol testimony."

The case of the Commercial Bank vs. French, 21 Pick. 486, was a suit upon a note, made payable to the "Cashier of the Commercial Bank," and it was contended that the suit should have been brought in the names of the person then Cashier, and would not lie in the name of the Corporation. But the Court there say : " So a contract with the stock-holders, or with the President and Directors, or with the Directors of the Commercial Bank, would doubtless be in its legal effects a contract with the corporation. It is not easy to perceive why a contract with the Cashier of a Bank is not a contract with the Bank itself. * * * * * The principle is that the promise must be understood according to the intention of the parties. If in truth it be an undertaking to the Corpora tion, whether a right or a wrong name, whether the name of the corporation or of some of its officers be used, it should be declared on and treated as a promise to the Corporation."

The above cases are in full accord with the decisions of our own State, that of Mechanics Bank vs. Bank of Columbia, 5 Wheat., 327, being cited with approval by Judge Ewing in Smith vs. Alexander, 31 Mo., 193 ; See also to the same effect Schultze vs. Bailey, 40 Mo., 69 ; Musser vs. Johnson, 42 Mo., 74 ; McClellan vs. Reynolds, 49 Mo. 321.

In the present case the note sued on is signed " Daniel McCarthy Prest." But president of what ? Just here, under the rules laid down in the above cited cases, parol evidence steps in and affords a ready and satisfactory explanation. The abbreviated word Prest. attached to the name of Daniel McCarthy is an ear mark of the official capacity in which the note was signed—not evidence, it is true, that the note was signed in that capacity, but a sufficient basis for the introduction of testimony tending to establish that fact.

I have hitherto treated this case just as if the note sued on were standing alone ; and explanatory oral evidence was offered in regard to the above alluded to abbreviation.

But this record presents a far stronger case then if the note stood by itself. Here the note is numbered 2969, so is the policy, and both are of even date. The note says "For value received in Policy No., 2969," and the policy recites the execution of the note "for the sum of seven hundred and fifty dollars, being the amount of deposit or premium for insurance as above said," thus keeping up as it were between the policy and the note a reciprocal cross fire of reference; and establishing beyond peradventure the design with which the note was executed, on whom the burden of its payment was intended to be cast, and for whose benefit the policy was meant to inure. To all intents and purposes, therefore, the result is precisely the same as if note, policy, and application were all written upon one and the same sheet of paper. To hold otherwise would be to entirely ignore the familiar rule, always applicable where one instrument makes reference to another.

McCarthy's authority to act in the premises is to be presumed from the high official positions which he held—being, as the evidence shows, at the time of the transaction put in issue by the pleadings, Superior or President and Procurator or Treasurer of defendant—from the fact the policy of Insurance was sent to him, from the fact that after notice of an assessment was sent to him at Perryville as President of defendant, that response was made through Burke, and the assessment paid; from the fact that McCarthy had in his possession the policy in question, together with others purporting to have been made in the same way and at the same time, and "authorized" a lawyer whom he consulted for the purpose "if they were not legal to have them made legal "; from the fact that Burke, the former Procurator or Treasurer of defendant, out of the money in his hands paid to him by the patrons of defendant, had made disbursements for assessments and sent memoranda thereof to McCarthy once or twice a year for several years, as McCarthy himself swears. These facts, and many others of like sort pointing in the same direction, leave no doubt in the mind that Burke, either by prior

appointment or subsequent sanction from McCarthy, was fully empowered to give the note and effect the insurance for the defendant which gave rise to the suit, and that McCarthy had full power to authorize Burke to act as he did. No proof of any special authority was required.

The doctrine has been long since justly exploded, that every act to be performed by the agent of a Corporation has to be authenticated by its Corporate Seal.

Thus in the "Union Manufacturing Company vs. Petken, 14 Conn., 174, speaking with reference to this point, the Court say :

" But it is said that no act or vote of the corporation is shown ; nor is there any witness to the fact that this was done by the Corporation, or by its authority. It is now quite toc late to question the acts of a corporation because a vote and seal are not shown, since the decisions in our own Courts and the Courts of the United States " (See also Western Bank of Mo., vs. Gilstrap, 45 Mo., 419.) It is the merest play upon words, to assert, as was done in one of the refused declarations of law asked by appellant, that " the law did not authorize any such officer of defendant as President."

The testimony of McCarthy himself shows, that the term Superior was tantamount to that of President and meant the same thing.

Once establish the fact, as the evidence amply does in this case, that a given person holds certain high official relations towards a Corporation, and is in the active exercise of powers for a series of years, and engaged in the performance of duties usually incident to such official position, and it matters little whether he is called Superior or President.

The first, second, and fourth declarations of law, which the Court refused to give for defendant, were properly refused as shown above. The defendant's third declaration was properly refused also, as it assumed the existence of two facts ; first, that Burke made the payments "without authority so to do," and second, that defendant "never assented to" such payments.

There are also minor exceptions in this record which have

either been incidentally passed upon in the foregoing remarks, or. which, although considered, are not regarded as possessing sufficient practical importance to merit specific mention.

As the result of the views herein expressed, there is no error in the record and the Judgment will accordingly be affirmed.

Judge Wagner absent. The other Judges concur.