THE FIRST NATIONAL BANK OF SPRINGFIELD, *Appellant*, v. FRICKE.

1. **Alteration of Note.** Any alteration of a promissory note by a party thereto without the knowledge of the other parties, however immaterial, will invalidate it as against them.

   In this case, one of the makers, who was president of the Odd Fellows' Building Association, after the note had been negotiated and without the knowledge of his co-makers, affixed to his name where it appeared as maker, the abbreviations: "Pres'd't O. F. B. Ass'n," and where it appeared as payee and indorser, in each place the abbreviation "Pres'd't." *Held*, that these were material alterations and invalidated the note as against the other makers.

2. **Ratification by a Corporation** of the unauthorized act of its agent is equivalent to previous authorization. It need not be manifested by a vote or formal resolution, or be authenticated by the seal of the corporation. It will be inferred from failure promptly to disavow the act when it comes to the knowledge of the corporation.

3. **Abbreviations:** EVIDENCE. Abbreviations appearing in a written instrument may be explained by parol evidence.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

This was an action on a promissory note. The defendants, who had signed as joint makers with Job Newton, denied liability on the ground that the note had been altered without their knowledge or consent. The evidence adduced at the trial showed that the note was made for the benefit of the Odd Fellows' Building Association, and was discounted at the plaintiff bank; that on the day it became due McElhaney, the president of the plaintiff bank, told Newton, who was president of the association, that he wanted to hold the association on the note, and requested Newton to alter the note; that Newton did alter it by adding the abbreviation: "Pres'd't O. F. B. Ass'n," and "Pres'd't," as shown in the opinion of the court; that these abbreviations meant and were intended to mean "President of the Odd Fellows' Building Association;" that suit was afterward brought upon this note in the name of plaintiff against the association by Boyd, the regularly employed attorney of plaintiff, in the probate and common pleas court of Greene county, and that plaintiff had received $600 from the association in part payment of the note. Other facts appear in the opinion.

*Chas. A. Winslow* and *Boyd & Vaughan* for appellant.

*C. W. Thrasher* for respondents.

## I.

SHERWOOD, C. J.—Action on a promissory note, which was in these words:

"$1,500          SPRINGFIELD, Mo., July 8th, 1876.

Four months after date we or either of us promise to pay to the order of J. Newton, 'Presdt.,' at the First Na-

tional Bank of Springfield, Missouri, $1,500, for value received, without defalcation or discount, with ten per cent. interest per annum after due until paid.

> J. NEWTON, 'Presdt. O. F. B. Ass'n.'
> J. W. McCULLAH,
> D. L. GRIFFITH,
> G. W. FRICKE."

Indorsed as follows :

> " J. NEWTON, Presdt.'

The note as originally drawn, was :

" $1,500.            SPRINGFIELD, Mo., July 8th, 1876.

Four months after date we or either of us promise to pay to the order of J. Newton, at the First National Bank of Springfield, Missouri, $1,500 for value received without defalcation or discount, with ten per cent interest per annum after due until paid:

> J. NEWTON,
> J. W. McCULLAH,,
> D. L. GRIFFITH,
> G. W. FRICKE."

Indorsed as follows :

> " J. NEWTON."

The defense was *non est factum.* The evidence shows clearly that the note, long after its execution, was altered by Job Newton at the request and in the presence of Mc-Elhaney, president of plaintiff, and in the absence of and without the knowledge or consent of defendants.

This unauthorized alteration so changed the instrument that defendants were no longer bound thereby. A very stringent rule has long been maintained by this court in regard to such alterations of written instruments—a rule which conforms to the policy of the law, and very properly forbids any tampering with written instruments, by those to whom their custody is necessarily confided. In *Haskell v. Champion,* 31 Mo. 136, one B. F. C. C., a member of the firm of Champion & Co., executed a promissory

note in his own name, and procured the signature of two persons thereon, as his indorsers. Subsequently before procuring sale of the note, without their knowledge, he added to his signature the words "and Co.," thus making it B. F. C. C. & Co., and the indorsers were held discharged, although it was contended that the words "& Co." did not vary the contract, as there was no such firm as B. F. C. C. & Co., and that the added words might " be treated as a flourish, meaning nothing." In that case, however, Scott, J., in speaking for the court, said: " The law, in dealing with the subject of alteration of written instruments, looks further than to the materiality or immateriality of the alteration. Aware of the danger of countenancing the most trifling change, it has not permitted those intrusted with such instruments. to alter them. and afterward defend their conduct by alleging the immateriality of the alteration. There is a motive to such conduct, and if an alteration of an instrument is immaterial and believed to be so, there can be no inducement to the act. Every man's sense of justice and propriety must teach him that it is wrong to alter in any way an instrument made by another which is to bind him. As the nature and purposes of contracts require that they should pass to the hands of those who are interested in altering them to the prejudice of those who execute them, and as the facilities for making alterations are numerous and the. difficulty of proving them is great, all means should be employed to impress on the minds of those who are in the possession of such paper, a sense of its inviolability." These remarks of the learned judge, considering the circumstances in which they were made; considering that it was contended that the words "& Co." were immaterial; were a "flourish meaning nothing," cannot be regarded as mere *obiter*, since they were necessary to a proper determination of the case in all its aspects.

The doctrine thus laid down has been repeatedly followed since. In *Evans v. Foreman*, 60 Mo. 449, we said:

\*     \*     "If mistakes do arise in the preparation of written instruments, aside from the consent of all parties to the needed correction, the courts of the country alone can furnish adequate redress, and we will not give sanction or countenance to the attempts of an interested party to effect by his own hand the desired reformation; as an honest blunder of this sort, if upheld in one instance, might necessitate sanctioning an alteration having that appearance but which from the infirmity of human testimony, might be grossly otherwise." In *German Bank v. Dunn*, 62 Mo. 79, we held that though the alteration was neither material nor fraudulent, yet the maker was discharged. And in the more recent case of *Moore v. Hutchinson*, 69 Mo. 429, we said: "The payee of the note had no right to alter the note in the slightest particular without the consent of all who were interested; and such unwarranted alteration rendered the note null in his hands, no matter how pure his motive in making the alteration."

And the ruling enunciated in the cases cited as to a written contract being avoided by an immaterial or the "slightest" alteration, is no new thing under the sun. This has been the rule in New Jersey since 1824, where it is held that any alteration of an instrument by the party claiming an interest under it, avoids the instrument. *Den v. Wright*, 2 Halst. 175; *Bell v. Quick*, 1 Green 312; *Hunt v. Gray*, 6 Vr. 227; *s. c.*, 10 Am. Rep. 232. In the last case, Beasley, C. J., said: "The reasons for this rule are obvious and of the most solid character. In its absence the inducement to fraud would be very strong, and public policy requires that, in the language of Lord Kenyon, 'No man shall be permitted to take the chance of committing a fraud without running any risk of losing by the event when it is detected.' Even immaterial alterations are fatal, as the rule, to be efficacious, cannot permit a person to tamper in any degree with the written contract of another in his possession." Under these authorities, whether the alterations made in the note in suit were material or immaterial,

makes no difference in the result, if such alteration was made by a party interested in the instrument.

In this case, however, the alterations were palpably material; it changed the note in these important particulars : it made the note payable to a different payee; to the representative of an incorporated company, instead of an individual; it changed the first maker of the note from an individual to an incorporated company, and lastly, it changed the individual indorser and made his indorsement that of the president of such company. And, as seen from the foregoing authorities, the motive which prompted the alteration, whether innocent or fraudulent, cannot affect the result. See also *Miller v. Gilleland*, 19 Pa. St. 119; *Neff v. Horner*, 63 Pa. St. 327 ; s. c., 3 Am. Rep. 555; *Fulmer v. Scitz*, 68 Pa. St. 237 ; s. c., 8 Am. Rep. 172.

## II.

But it is said that as McElhaney was not the custodian of the note and was in no way empowered by the board to act with reference to the same, what he did was the act of a stranger, and could not bind the plaintiff. This remark is doubtless true if McElhaney had no original authority to procure the alteration, or if his conduct in this regard did not meet with the subsequent sanction of the plaintiff. But this ratification occurred. The payment of the $600 on the note by the Odd Fellows' Building Association; the acceptance and receipt of the same by the bank, and the subsequent bringing, by the regular attorney of the bank, of a suit in the common pleas court on the note as altered, are not susceptible of any other construction than that the bank ratified what had been done. And the facts recited show also ratification by the Odd Fellows' Building Association of their president's act. There is no ground, therefore, for calling either the act of McElhaney or that of Newton the act of a stranger. "If a corporation ratify the unauthorized act of its agent, the ratification is equivalent to a previous authority, as in case of natural

persons." Field on Corp., § 167. And such ratification need not be manifested by any vote or formal resolution of the corporation, or be authenticated by the corporate seal; certainly not in cases like the present. Thus where the president of a railroad company established certain rates of fare and freight on a railroad, the corporation receiving and appropriating such rates was held to have ratified the president's acts and as tantamount to an original authority. Field on Corp., § 155, and cases cited. And the law of agency is as well settled with respect to corporations as to individuals, that if with knowledge of the unauthorized act of the agent the corporation neglect to promptly disavow such act, it will be as binding on the corporation as if prior authority had been conferred. Ib.; *Christian University v. Jordan*, 29 Mo. 68; *Kelsey v. Bank*, 69 Pa. St. 426; *Bredin v. Dubarry*, 14 S. & R. 30; *Gordon v. Preston*, 1 Watts 387; *Bank v. Reed*, 1 Watts & S. 101. And, certainly, no higher degree of evidence is requisite in establishing ratification on the part of a corporation, than is requisite in showing an antecedent authorization. And in regard to the latter, the doctrine is, that in order to bind the corporation in cases like the present one, no formal vote or resolution of the corporation need be shown. *Union Manufacturing Co. v. Pitkin*, 14 Conn. 174; *Washington Mutual Fire Ins. Co. v. St. Mary's Seminary*, 52 Mo. 480; *Preston v. Mo. & Penn. Lead Co.*, 51 Mo. 43; *Western Bank v. Gilstrap*, 45 Mo. 419, and other cases cited by defendant's counsel.

## III.

And it was perfectly competent to show by parol evidence what the abbreviations placed in connection with Newton's name and signature meant, to afford an explanation of such abbreviations, and to show upon whom the liability arising from the alteration was intended to be cast. *Washington Mutual Fire Ins. Co. v. St. Mary's Seminary, supra*, and cases cited; Field on Corp., §§ 197, 198.

Straus v. The K nsas City, St. Joseph & Council Bluffs Railroad Company.

This cause was tried in conformity to these views; and for the reasons aforesaid, judgment affirmed. All concur, except HENRY, J., who concurs in the result.