STRIPLING, Respondent, v. MAGUIRE, Assignee of SOUTHERN STOCK & GRAIN COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. PRACTICE: Jurisdiction: Irregularity: Transfer of Cause. An error in transferring a cause from one division of the circuit court of St. Louis city to another division, newly created, was not fatal to the jurisdiction, but a mere irregularity and not subject to review unless preserved by a proper bill of exceptions.

2. ———: Irregularity: Circuit Courts of St. Louis City. Under section 12 of article 17 of the Scheme and Charter for the City of St. Louis (R. S. 1899), power is conferred on a majority of the judges of all the divisions to make such disposition of the business of the court as they deem expedient.

3. ———: Assignment: Allowance of Claim. A proceeding before a statutory assignee for the allowance of a claim against the estate is not inherently a part of the administration, but collateral to it, so that, on appeal from the ruling of the assignee to the circuit court, it need not be tried in the same division of the court in which the estate is being administered.

4. **CORPORATIONS: Agency: Authority of President.** The president of a corporation may bind a corporation by contract on its behalf in matters presented in the ordinary course of business, without express authority from the board of directors.

5. ———: ———: ———: **Release of Debt.** But where the proper release of the maker of notes payable to the corporation was in issue, it was error to submit the issue, assuming that the president had such authority *virtute officii.*

6. **AGENCY: Trustee of an Express Trust.** Where a broker, representing a number of customers, transmitted all his orders to a correspondent, dividing with such correspondent the commissions received, making all contracts on behalf of his customers in his own name, he was entitled to sue in his own name on account of such transactions for any money due his customers.

7. ———: ———: **Double Agency.** Nor was such broker precluded from recovery by the fact that he was agent for both parties since such dual agency was known and recognized by both.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. R. Kinealy,* Judge.

REVERSED AND REMANDED.

*Crigler & Kelley* and *W. L. Mason* for appellant.

(1) Division No. 10 had no jurisdiction to try this cause. There had been no final decision in No. 5, and therefore no part of the assignment case proper could be transferred to another division. Haehl v. Wabash, 119 Mo. 325, 24 S. W. 737; Goddard v. Delaney, 80 S. W. 891. (2) All the parties in interest must be made plaintiff or defendants. White v. Dyer, 81 Mo. App. 643; State ex rel. v. Fraker, 166 Mo. 130, 65 S. W. 730. (3) There was no segregation. The confusion was the act of plaintiff, he must segregate or lose. The wrongdoer must make the separation or lose; the jury or the court cannot make it for him. Diversey v. Johnson, 93 Ill. 547; Franklin v. Gumersell, 9 Mo. 90; Kauffman v. Schilling, 58 Mo. 218. (4) The president of a corporation has no authority to release obligors to com-

mercial paper, payable to his corporation, except by the authority of the board authorizing him to act. He may bind himself, but cannot bind his corporation. Nor can the president or general manager make any assignment of the assets of the company, without authority of the board of directors. 21 Am. and Eng. Ency., p. 852; Railroad v. McVay, 98 Ind. 391; O'Brien v. Drayage Co., 81 Mo. App. 664; Degnan v. Thoroughman, 88 Mo. App. 62; Bank v. Fesler, 89 Mo. App. 217. (5) And the directors cannot ratify his act by simply acquiescing in it. The act of ratification must be as formal as their authorization should be under the law. State ex rel. v. Perkins, 90 Mo. App. 603. (6) A party acting as agent for both parties without disclosing such double agency cannot recover commission from either party. It is against public policy. Rosenthal v. Drake, 82 Mo. App. 358. (7) The plaintiff admitted—testified—that he was acting as the agent of both parties, and did not prove that "both parties knew it;" therefore he can not recover. It is against the maxim of morality. Saint Luke, 16:13; Chapman v. Currie, 51 Mo. App. 40; Atlee v. Fink, 75 Mo. 100; Wadsworth v. Adams, 138 U. S. 380; McKinley v. Williams, 74 Fed. 94.

*W. J. Lamb* and *R. P. & C. B. Williams* for respondent.

(1) The proceedings of an assignee in allowing or disallowing claims are separable from the assignment proceedings proper; there was therefore no error in Division 5 transferring this case to Division 10, without transferring the whole assignment proceedings, and the latter division had jurisdiction of the cause. Statutes 1899, secs. 241, 242, 243, 244 and 245; sec. 12 of art. 17 of laws specially applicable to city of St. Louis. State ex rel. Herriford v. McKee, 150 Mo. 233, 51 S. W. 421; Stearns v. Railroad, 94 Mo. 317, 7 S. W. 270. (2)

The contract made by Sledge, president of the corporation, releasing plaintiff from liability on the notes in question, was binding on the corporation. The president is the legal head of the corporation, and all of his acts pertaining to the business of the corporation are binding on the corporation, without express authority of the directors. Jones v. Williams, 139 Mo. 27, 39 S. W. 486, 40 S. W. 353; Sparks v. The Dispatch Co., 104 Mo. 531, 15 S. W. 417; 21 Am. and Eng. Ency. of Law, p. 850. (3) The president of a corporation has the power to release from any contract that he has the power, expressly or impliedly, to make originally. Rolling Mill Co. v. Railway, 120 U. S. 256. (4) Stripling was not acting as agent for both parties in the sense and meaning of the law condemning double agency. His attitude and relation to each party was known to the other, and he was not guilty of disloyalty to either. Realty Co. v. Neely, 99 Mo. App. 384, 73 S. W. 359; Hayden v. Grillo, 26 Mo. App. 296. (5) Stripling, as regards the money that belongs to his customers, is the trustee of an express trust, and as such has the right to sue for and recover such money in his own name. R. S. 1899, sec. 541; Snider v. Express Co., 77 Mo. 523; 1 Am. and Eng. Ency. of Law, p. 1162; Albany Nov. Co. v. Lundberg, 121 U. S. 451. (6) The Southern Stock & Grain Company dealt with Stripling personally in respect of the contracts and transactions out of which the account in suit arose, and whether his agency for his customers in such dealings was or was not known to the Southern Stock & Grain Company, the legal interest in such contracts or transactions, and the right of action in respect thereof, vested personally in Stripling. Mechem on Agency, secs. 755, 756 and 757; 1 Am. and Eng. Ency. of Law, p. 1162; Caggbum v. Simpson, 22 Mo. 351; Harvey v. Pitcher, 13 Mo. 91.

REYBURN, J.—Respondent tendered for allowance to the appellant, as statutory assignee of the

Southern Stock & Grain Company, a claim for balance of $4,018.44, which was disallowed by the assignee, who also rejected a set-off or counterclaim on behalf of his assignor, and the claimant's appeal to the circuit court was assigned by the clerk of the court to Division No. 5, in which the assignment proceedings also chanced to have been assigned and were pending. Subsequently two additional divisions of the circuit court of the city of St. Louis were established by the Legislature, and by order of the court convened in general term and embracing a majority of the judges, and without knowledge of either party, this cause was transferred to court number ten, in which court the trial resulted in verdict of a jury in plaintiff's favor for a substantial portion, but not all of his claim and for him also upon defendant's counterclaims.

Respondent, a broker at Corinth, Mississippi, was engaged in buying and selling stocks, grain, cotton and other commodities for local customers. The Southern Stock & Grain Company was a corporation in similar business in the city of St. Louis, and a wire, for which respondent paid rental, was conducted from its office into respondent's office; by this means respondent promptly received market reports and quotations of prices and orders obtained by him for purchases or sales were transmitted to the corporation at St. Louis, pursuant to an arrangement between them, by which the corporation was thus to receive and execute such orders, respondent being paid a stipulated portion of the commissions charged on such transactions. The transactions and accounts of this corporation and respondent were personal between them, without knowledge or information on part of the stock corporations who were the customers and principals of respondent, all orders and transactions being in the name of respondent alone, who in turn dealt in his own name and kept his account individually with his customers, who were likewise ignorant of the stock corporation. Such

customers made deposits of cash with respondent in connection with their transactions and he became individually responsible to them and their debtor for such sums; in turn he remitted amounts to the corporation in the purchases and sales and the latter became responsible to him and his debtor in amount of such remittances. Respondent appears to have been also individually liable to his customers for profits of their ventures, and they were responsible to him for accruing losses; in the same manner the corporation accounted to respondent personally for profits derived and charged him individually with losses in the transactions conducted in executing his orders, and the account upon which this action was based was made up of items of debit and credit of the above general description resulting from such course of business. Defendant interposed as an answer and counterclaim to the respondent's demand, several notes executed in name of Hill & Stripling, of which firm respondent was a member, exceeding in total his claim, but which he alleged had been satisfied and discharged, so far as he was affected, by the corporation. These notes represented an indebtedness of a third party in transactions had by him with such firm and by the latter executed through the corporation, the matter being closed by the firm giving the notes to the corporation, as respondent contended, as a matter of form, with understanding that their payment, if ever made, was contingent and conditional on collection of the indebtedness from the original debtor of the firm. The testimony of a witness, at once the president and general manager of the corporation, tended to prove that respondent was about to leave the employ of the corporation and the release of respondent from liability on the notes was made a consideration and inducement to remain in its service, such agreement being made by its president and manager but with knowledge and consent of its directors, and respondent contained in its service as correspondent

with their knowledge until the assignment was made without dissent.

1. The proposition that the division of the circuit court, to which the cause was transferred after assignment primarily to another division of the same court, was without jurisdiction, is not tenable. Arguing by analogy to the situation exhibited on a change of venue from one circuit court to another, the error if any, could have been but a mere irregularity in procedure and was not fatal to the jurisdiction of the trial court, nor subject to review unless preserved by proper bill of exceptions. Stearns v. Railroad, 94 Mo. 317, 7 S. W. 270. But the procedure was regular and directly authorized as within the express and distinct powers conferred on the court in general term to provide for the disposition of business as the majority of the judges of all the divisions deemed expedient. Sec. 12, chap. 17, Scheme and Charter, p. 2533, 2 vol., R. S. 1899. The proceedings before an assignee under the statute for determination and marshalling of lawful claims entitled to participate in the distribution of the assets, he is administering, are by virtue of the powers vested in him by the assignment but are collateral to the administration under the assignment instrument and are not inherently part of such proceedings but are divisible and distinct therefrom, so that an appeal from the ruling of the assignee to the circuit court is not essentially and as a matter of course to be assigned to that division of the court, where the proceedings involving the administration of the trust are lodged and pending.

2. The material issue involving the continued liability or discharge of claimant upon the notes executed by the firm in which he was a copartner was submitted to the jury upon the following instruction at plaintiff's instance:

"The court instructs the jury that if you believe from the evidence that the president of the Southern Stock & Grain Company agreed with Stripling to re-

lease him from liability on the notes set up by defendant as counterclaims upon the consideration that the said Stripling would continue in the service of the said Stock & Grain Company, and that said Stripling did so, you will find for the plaintiff, W. D. Stripling on said counterclaims.''

The testimony introduced consisting of the statements of the president and general manager, if accepted by the jury, demonstrated that the directors consented to the execution of the agreement with respondent prolonging his relations with the corporation, one condition of which was his discharge from further obligation on the notes. The president of a corporation, as its chief executive, is entrusted with broad and liberal power and authority in the general conduct and management of its affairs; it has been held that in an act performed by him as the legal head of the corporate body, the presumption should be indulged that such act is legally performed and binding on the corporation. Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353. But without precise determination of the scope and limitations of his authority, the proposition is fully warranted that the president of a business corporation may bind the corporation by contracts on its behalf in the matters presented in ordinary course of business without express authority from the board of directors. Sparks v. Dispatch Co., 104 Mo. 531, 15 S. W. 417.

This instruction, however, assumes that a president of a corporation, *virtute officii,* has the power to release claimant from liability upon the notes involved. While the range of the authority of a president, also general manager, of a business corporation, as stated, is necessarily liberal and embraces general authority to perform all acts usual and essential in the ordinary transaction of the daily business of the corporation, his authority to discharge claimant as well as such discharge were both facts in issue and should both have been passed upon by the jury, and the instruction is

fatally defective in assuming in lieu of submitting such issue.

3.. Appellant complains that the account in suit embraced items, title to which was not in respondent and for which he could not recover, as particulars of the account were moneys belonging to his customers, who had transferred no right of action therefor upon him and as there was no segregation of such items, which devolved upon respondent upon the doctrine applied to comprehend matters of account, that the party causing the confusion of property must suffer, the plaintiff was therefore barred from any recovery. From the course of dealings and methods of business established and prevailing between respondent and the corporation, and respondent and his own customers, the contracts on both sides were with him, as the principal, and he was treated as the individual and sole creditor and debtor by each; but the court gave the instruction at instance of defendant profferred on such issues and no just ground of complaint exists, as we can not weigh the evidence in such case.

4. Nor was respondent deprived of any right of recovery because he was in truth the agent of both parties; his attitude as a broker for his customers and as correspondent of the corporation was known and recognized by both, and not concealed from either party, and the principle precluding an agent from recovery of commissions because of undiscovered dual agency is not applicable. Nor were the customers of respondent essential parties; as narrated, he was principal on both sides, personally liable to each and plainly entitled to enforce by suit contracts entered into with him individually, though he himself might in turn be answerable over the parties from whom he in fact, as agent, executed such contracts.

For the errors indicated, the judgment is reversed and the cause remanded. All concur.